KATCHEL, Respondent, vs. NORTHERN ENGRAVING & MANU-
FACTURING COMPANY, Appellant.

*October 24—December 18, 1946.*

For the appellant there were briefs by *Lees & Bunge* of La Crosse, and oral argument by *Brantly P. Chappell* of La Crosse and *W. L. Jackman* of Madison.

For the respondent there was a brief by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Thomas H. Skemp*.

RECTOR, J.    Sec. 7 of the Fair Labor Standards Act of 1938, 52 Stat. 1060–1069, 29 USCA, secs. 201–219, requires that no employer, with exceptions not here material, employ an employee engaged in interstate commerce or in the production of goods for such commerce for a work week longer than forty hours unless such employee is compensated for hours in excess of forty at not less than one and one-half times the regu-

lar rate at which he is employed. Provision is made by sec. 6 for payment of specified minimum rates per hour, but those provisions are not in issue in this case. Sec. 13 provides that the requirements of secs. 6 and 7 shall not apply with respect to an employee employed in a *bona fide* executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the administrator). There are other exemptions in the section that are not material. Sec. 16 specifies that an employer violating sec. 6 or 7 shall be liable to the aggrieved employee in the amount of his unpaid minimum wages or unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages, and that the court in which such an action is instituted shall in addition award to the employee-plaintiff a reasonable attorney's fee and costs of the action.

The first question is whether the respondent Katchel is an employee included within the class upon which sec. 7 confers rights to overtime compensation. It is agreed by both parties that he is within that class unless he is excluded as an employee in an executive capacity under the terms of sec. 13 to which attention has been called. As bearing on this matter, the administrator of the wage and hour division, pursuant to the provisions of sec. 13, has defined and delimited the phrase *"bona fide* executive . . . capacity" as applicable to an employee—

"(a) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(b) who customarily and regularly directs the work of other employees therein, and

"(c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(d) who customarily and regularly exercises discretionary powers, and

"(e) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(f) whose hours of work of the same nature as that performed by nonexempt employees do not exceed twenty per cent of the number of hours worked in the work week by the nonexempt employees under his direction; provided that this subsection (f) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment." Wage and Hour Division Regulations, sec. 541.1.

In a special verdict the jury was asked whether Katchel was an executive during the period for which overtime compensation was claimed. The jury answered that he was not. The company contends that this finding is not sustained by the evidence.

Katchel was originally employed from March, 1942, to January 31, 1943, in the capacity of a guard at the gates of a plant operated by the appellant manufacturing company. The company operated three plants in the city of La Crosse, in which it was engaged in the manufacture of war materials for the United States government, and the usual precautions against interruption of manufacture by reason of sabotage, accidental fires, and the like, were taken. There were two gates for the admittance of employees and others at the plant in which Katchel was employed. The plant operated upon a twenty-four-hour basis, and this required three eight-hour shifts of employees. There was one regular guard at each gate during the period of each eight-hour shift. His duties were to see to it that no one was admitted other than those entitled to admittance, although there is some further testimony that from time to time such guards would make inspectional tours of the plant. As to what arrangements were made for a watch at the gates during such tours does not appear. During

the time of Katchel's employment as a regular guard he was compensated at the rate of $30 per week for a time and later this was increased to $32.50. After the increase he was compensated for overtime at the rate of $1.21½ per hour.

On January 31, 1943, respondent was appointed as a lieutenant of the guards at the plant where he had been employed. There was one captain of the guards in charge of all guards at the three plants and prior to Katchel's appointment there had been a lieutenant of the guards at one of the other plants. The argument on this phase of the case turns on whether, as a lieutenant of the guards, Katchel was an executive within the meaning of the administrator's regulations.

As we have seen, sec. 541.1 (f) of the administrator's regulations provides that to constitute an employee an executive his hours of work of the same nature as that performed by nonexempt employees must not exceed twenty per cent of the number of hours worked in the work week by the nonexempt employees under his direction. Where, as here, an employer claims that an employee is an executive, the burden devolves upon him to show that the employee qualifies as such within the administrator's definition. *Smith v. Porter* (8th Cir. 1944), 143 Fed. (2d) 292; *Helliwell v. Haberman* (2d Cir. 1944), 140 Fed. (2d) 833. The evidence so clearly establishes that the test of sec. 541.1 (f) was not satisfied, that a consideration of the other requirements is unnecessary. Katchel was notified of his employment as a lieutenant by Mr. Werel, who was the captain of the guards. Werel told him he was to be in charge of the guards at that plant. Both Werel and Katchel agreed that at the time of his appointment nothing was said as to what his duties were to be. Katchel testified, however, that he understood that they were to consist in part of inspectional work within the plant of the same character as the work done by gate guards on their inspectional tours. He said that fifty per cent of his working time was spent in doing such work and in relieving the gate guards at

their posts when such relief was needed. There is no testimony to the contrary.

The second question involves the extent of the compensation to which Katchel is entitled. In order to answer the question it is necessary to determine the number of overtime hours worked and the rate at which the overtime compensation should be figured.

In response to a question in the special verdict, the jury found that Katchel had worked eleven hundred overtime hours. The company contends that this finding is not supported by the evidence. The finding is grounded, for the most part; upon Katchel's testimony. He stated that while he was free to fix his hours as he chose, the nature of his work required that he be present at the plant from 6:30 a. m. to 12 noon, from 12:30 p. m. to 4 p. m. and from 7:30 p. m. to 9 p. m. each day for six days each week, and that he was required to be present at the plant from 9:30 a. m. to 11:30 a. m. or 12 noon each Sunday. He testified that he worked sixty-five hours in each of the forty-four weeks during which he was employed as a lieutenant. The guards did not punch a time clock as did other employees, and the only record kept of their coming and going was that kept by the gate guards as they went in and out of the plant. All such records were destroyed prior to the commencement of this suit and were not accessible. In this respect the employer was at fault, although admittedly there was no ulterior purpose in the destruction of the records. The regulations promulgated by the administrator under the provisions of sec. 11 of the Fair Labor Standards Act require that employers preserve records showing hours of employment for at least four years. Wage and Hour Division Regulations, sec. 516.14. Had such records been preserved, it would have been relatively simple to compute the hours of Katchel's employment.

In *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U. S. 680, 66 Sup. Ct. 1187, 1192, 90 L. Ed. 1515, it was held that

where such records had been destroyed or were inaccurate or inadequate, an employee meets the burden of proving his case if he shows that he has performed work for which he was improperly compensated and if he "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." It is said that "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." According to Katchel's testimony, he worked sixty-five hours each week for forty-four weeks as a lieutenant of the guards. There is some testimony of other guards that he did not always report each day as early as he claims to have reported, but it is not of such a character that it is possible to ascertain the number of such days or the time that he did report on such occasions. There is testimony that he made several trips to Chicago for the purpose of taking samples for inspection. These occasions were infrequent, however, and while some time was lost at the plant, he was performing work for the company at the time and it would make no difference whether he was working at the plant or somewhere else. Moreover, he testified that he started on such trips during the latter part of the afternoon and customarily was back at work the next morning, although on one or two occasions he was late. There is testimony of a fellow employee to the effect that Katchel customarily rode down town each morning in a station wagon driven by this employee, and lunched at a restaurant. The employee testified that he would then pick up Katchel at one of the other plants. Usually he picked him up twenty minutes or a half hour after he left him but on some occasions he would not pick him up for a period of two hours. There is a suggestion in Katchel's testimony that at least some of these trips were required for car inspections at other plants, but he claims that in

any event he was permitted to lunch on company time if he so desired. Such would seem to be a rather unusual state of affairs, but the testimony is not refuted. .

Viewing the matter in the light of the rule laid down in *Anderson v. Mt. Clemens Pottery Co., supra,* we are of the opinion that Katchel has proved his case as to the number of hours worked.

We must next determine the rate of compensation at which Katchel was employed. The act specifies that an employee's compensation for hours worked in excess of forty shall be computed at one and one-half times the "regular rate" at which he is employed. There was no jury finding·as to his regular rate of compensation. The trial court found that Katchel was employed at the rate of $36 for a forty-hour work week and that he was paid $3 per week for overtime. His regular rate of compensation per hour was determined by dividing $36 by forty. The figure of ninety cents per hour was thus obtained, and his overtime compensation was figured upon the basis of one and one-half times ninety cents or $1.35 per hour. His total compensation was arrived at by multiplying the number of overtime hours by $1.35 and subtracting the $3 per week which the court found had been paid for overtime.

Before we consider the evidence bearing on the question of the regular rate it is well to set out the applicable rules of law. "Regular rate" necessarily means the regular hourly rate of the employee's nonovertime compensation. Where, as here, the employment contract specifies no regular hourly rate, but instead specifies a weekly rate, it is necessary to translate the weekly rate into an hourly rate. The hourly rate thus depends upon the number of hours for which the weekly payment was intended to compensate. In cases where there is no agreement as to hours, the hourly rate is obtained by dividing the weekly compensation by the number of hours worked. In cases where the weekly rate is fixed as compensation for a certain number of hours, the hourly rate is obtained by dividing

the weekly rate by that number of hours. These propositions are so well established by the cases that no further discussion is necessary. *Overnight Motor Co. v. Missel* (1942), 316 U. S. 572, 62 Sup. Ct. 1216, 86 L. Ed. 1682; *Walling v. Helmerich & Payne* (1944), 323 U. S. 37, 65 Sup. Ct. 11, 89 L. Ed. 29; *Patsy Oil & Gas Co. v. Roberts* (10th Cir. 1943), 132 Fed. (2d) 826; *Adams v. Union Dime Sav. Bank* (2d Cir. 1944), 144 Fed. (2d) 290.

It is evident that we must now inquire into the arrangement between Katchel and the company as to the hours he was to work and the compensation he was to receive as a lieutenant. There is no material dispute as to these matters. Both Katchel and Werel agreed that Katchel's hours of employment were to be such as he might find necessary in view of the requirements of his work. No definite number of hours was fixed. Werel testified that he told Katchel he was to receive $36 per week. Katchel testified that nothing was said at the time of his employment as a lieutenant as to what his compensation would be. He admitted, however, that for the first two weeks of his employment he received $36 per week. There can be no doubt that at the inception of Katchel's employment he was paid $36 for the sixty-five-hour week which he then himself determined to be necessary in order to perform his duties. Beginning with the third week of his employment as a lieutenant Katchel received $39 per week. The captain of the guards testified that this represented the $36 specified in the original agreement plus $3 allowance for attending a school for guards. Katchel claims that he was not compensated for attending the school and that the company allowed the extra $3 as payment for the twenty-five hours in excess of forty which he was then working. As proof of this he offered in evidence two slips of paper which had been attached to salary checks which he received. Each salary check was accompanied by a slip itemizing regular time, overtime, and deductions for withholding tax, bonds, etc. One of the slips was

received prior to Katchel's employment as a lieutenant. It shows that he received $32.50 for regular time of forty hours and $2.43 for two hours of overtime at $1.21½ per hour. The slip received after he was employed as a lieutenant shows $36 in the column denominated "Regular." In the column entitled "Overtime" the figure "+3.00" is set out. Katchel reasons from this slip that his regular rate was $36 and that the $3 were for time in excess of forty hours.

There are factors which show that the $3 item was not intended as overtime compensation. It is not set out in the same manner that overtime payment would have been set out. The other slip, which concededly shows overtime payment, sets out the number of overtime hours, the rate per hour, and the total overtime compensation. The same slips were used in both cases, but no attempt was made to specify hours of overtime, a rate of overtime, or total overtime compensation in the case of the slip received as a lieutenant. The fact that these various spaces are left blank and the $3 figure is accompanied by a plus sign is significant. It indicates that the $36 regular rate was increased by the sum of $3 without regard to factors such as the number of overtime hours and the rate per hour. The company made out the slip and the company not only denies that it paid the $3 by way of overtime compensation, but in this very case insists that it was not required to pay overtime compensation. Moreover, the sum of $3 was not an appropriate figure for the overtime compensation which Katchel claims. According to Katchel, he was working twenty-five overtime hours at that time. On that basis, if he had been employed at $36 for a forty-hour week, he would have been entitled to receive $33.75 for overtime. Instead of that, upon his theory he received $3 for overtime. No satisfactory explanation is made as to how this $3 could have been paid or accepted as compensation for twenty-five hours overtime. The only logical explanation for its payment lies in the explanation made by Werel that it was in-

tended to compensate Katchel for attending a guard school. According to Katchel's testimony he was not compensated for attending the school and his claimed overtime does not include such compensation. However, all other guards received compensation for attending the school. The other lieutenant received $3 and the regular guards received an allowance of overtime. There is no reason to believe that Katchel, of all the guards, was singled out and denied compensation for attending the school, particularly since we have direct testimony that he was compensated as were the others.

In considering the testimony dealing with Katchel's compensation, two things stand out: First, the company denies it paid him any overtime compensation and, second, Katchel's testimony that it did is based entirely upon speculation, since it rests upon his interpretation of what the company intended when it placed the figures upon the slip attached to his check. Katchel does not claim that the company agreed to give him overtime compensation; he claims only that it did in fact give him overtime compensation, as evidenced by the $3 item on the slip. However, at the inception of his employment as a lieutenant Katchel certainly did not receive overtime compensation and was promised none, and the addition of the $3 item after the second week fails to show any change in the understanding of the parties with respect to allowance for overtime. For reasons which have been discussed, it is more consistent with Werel's statement that it was intended to compensate Katchel for attending the guard school.

We conclude that Katchel was originally employed at $36 for such hourly work week as he might choose to work, that he in fact began work on the basis of a weekly period of sixty-five hours, that beginning with the third week of his employment he was paid $3 additional for attending a guard school, and that his regular rate must be determined by dividing $36 by sixty-five, the number of hours worked per week. The regular nonovertime rate per hour is fifty-five and one third cents.

Katchel has already been paid the regular rate for his overtime and he is entitled to receive one half that rate in addition for eleven hundred overtime hours. *Lorber v. Rosow* (D. C. 1944), 58 Fed. Supp. 341.

The trial court made an allowance of $350 attorney's fee to Katchel. The company argues that in addition to the $350 attorney's fee, costs and disbursements of $128.39 were allowed and that of this amount $100 was an attorney's fee under the provisions of sec. 271.04, Wis. Stats. It is contended that this item of $100 for attorney's fee is duplicated by the allowance of an attorney's fee in addition to costs and that the attorney's fee allowed should be reduced by that amount. We do not agree with the contention. Sec. 16 of the federal act provides that a reasonable attorney's fee shall be allowed in addition to costs. The costs are fixed by state statute and the attorney's fee contemplated by the federal act is in addition to costs. The situation is comparable to that in which an attorney's fee is provided for in a mortgage. Upon foreclosure the court may allow such a fee in addition to the statutory costs. *Wylie v. Karner* (1882), 54 Wis. 591, 12 N. W. 57.

It was agreed by the parties at the oral argument that the unpaid compensation of the employee is subject to the provisions of the federal income tax law and that the employer must withhold such amounts as are required thereunder. It was also agreed that the judgment should be modified to permit such withholding.

*By the Court.*—The judgment is modified by reducing the overtime compensation to the sum of three hundred eight ($308) dollars and the liquidated damages to the same sum. Upon the appellant's filing an affidavit showing the amount of taxes withheld and remitted by it upon the overtime compensation, the judgment shall stand satisfied as to such amount. As so modified, the judgment is affirmed.