**CRAWFORD PRODUCTION COMPANY, a corporation, Appellant,**

v.

**T. E. BEARDEN, Appellee.**

**No. 6135.**

United States Court of Appeals Tenth Circuit.

Oct. 27, 1959.

W. E. Green and William S. Hall, Tulsa, Okl. (Green & Feldman, Raymond G. Feldman, and George A. Farrar, Tulsa, Okl., on the brief), for appellant.

Claude E. Love, Oklahoma City, Okl. (Schwoerke & Schwoerke, Oklahoma City, Okl., on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Bearden commenced this action against Crawford Production Company [1] to recover alleged unpaid overtime compensation, liquidated damages, and attorneys' fees pursuant to § 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 216(b). From a judgment awarding Bearden overtime compensation, liquidated damages, and attorneys' fees, the company has appealed.

The company was engaged in the production in the State of Oklahoma of petroleum products for interstate commerce. It employed Bearden as a pumper from January 4, 1954, to September 7, 1955. During such period it paid him wages at the rate of $250.00 per month. The agreement for Bearden's employment was entered into between Hamilton, field foreman for the company, and Bearden. There was no discussion as to how long Bearden would work or as to what days or what hours he would work. It was agreed that Bearden would receive a salary of $250.00 per month. Bearden left his home for work at 7 a. m., and was expected to quit whenever his duties for the day were finished. There was no agreement as to an hourly wage, hours of work, or as to how many hours Bearden would work either per day or per week. The foregoing facts were clearly established by the testimony of Bearden and Hamilton, the latter having been called as a witness for Bearden.

Bearden testified that he left his home for work at 7 a. m., and usually would be back home from his work at 4:30 or 5 p. m., but on occasions his work day would extend much later than 5 p. m., depending upon the status of the tanks, weather conditions, and treatment of bad oil; that from January, 1955, to the first of August, 1955, he worked seven days a week, with the exception of a day or two, and that from the first of August, 1955, to September, 1955, he worked six days a week. He further testified that he was paid a salary of $250.00 per month for the entire period of his employment.

Bearden further testified that shortly after his employment Hamilton told him to make out his time sheet for eight hours per day, and that there "wouldn't be no use putting Sundays on there because we didn't get no overtime nohow, just got a day off"; that accordingly he made up his time sheets for six days a week and eight hours a day, noting thereon the days he was off. His time sheets showed a six-day week even when he worked seven days.

Prior to September 12, 1956, the Honorable James P. Mitchell, Secretary of Labor, brought civil action No. 3900 against the company in the United States District Court for the Northern District of Oklahoma seeking an injunction restraining the company from further violations of the Fair Labor Standards Act of 1938, as amended. The action came on for trial on the date last mentioned. The court made findings of fact which in part read:

"III. * * *

"(c) In numerous workweeks during the period of their employment involved in this action, particularly from January, 1954 to March 16, 1956, defendant employed the following employees, and others, as pumpers on its leases in excess of 40 hours per week without compensating such employees for their employment in excess of 40 hours in such workweeks at rates not less than one and one-half times the regular rate at which they were employed:

Donald M. Bearden
T. E. Bearden
James T. Downey
Jackie Shelton
Ralph Frederick

* * * * * *

"IV. On October 21, 1938, the Administrator of the Wage and Hour Division, United States De-

---

1. Hereinafter called the company.

partment of Labor, pursuant to the authority conferred upon him by section 11(c) of the Act, duly issued and promulgated regulations prescribing the records of persons employed and of wages, *hour*, and other conditions and practices of employment to be made, kept, and preserved by every employer subject to any provision of the Act. The said regulations, and amendments thereto, were published in the Federal Register and are known as Title 29, Chapter V, Code of Federal Regulations, Part 516.

"V. Defendant within the period subsequent to January, 1954 has failed to make, keep and preserve accurate records of the number of hours worked each day and each workweek by its office employees and those engaged as pumpers and referred to in finding No. III(c) above.

"VI. In April, 1950, and upon seeking such legal assistance, defendant received an opinion from a leading law firm in the City of Tulsa, Oklahoma, explaining the applicability of the Fair Labor Standards Act to its employees, specifically mentioning those employed as pumpers and roustabouts. The opinion pointed out the overtime requirements, section 7, of the Fair Labor Standards Act and explained that overtime compensation was required after 40 hours in a workweek. The letter made no mention of, and did not recommend, any wage plan based upon a monthly salary.

"VII. An investigator of the Wage and Hour Division, United States Department of Labor conducted an investigation of defendant's operations and employment practices in October, 1955, and in December, 1955, specifically explained the applicability of the Act to defendant's employment practices, pointing out the requirements of sections 6, 7 and 11(c) thereof and explaining wherein its employ-ment practices failed to comply therewith."

It also made conclusions of law which in part read:

"III (a) In Employing its employees referred to in finding of fact No. III for workweeks longer than 40 hours without compensating such employees for hours in excess of 40 per workweek at rates not less than one and one-half times the regular rate at which they were employed, as found in said findings of facts, defendant violated sections 7 and 15(a) (2) of the Act.

"(b) The practice of paying pumpers and roustabouts pursuant to a guaranteed monthly salary for workweeks in excess of 40 hours followed by defendant, as described in paragraph No. III(b) and (c) of the findings of fact, did not comply with the overtime requirements of the Act, because the employees did not receive compensation at the rate of one and one-half times their regular rate of pay for hours worked in excess of 40 per week and because the wage plan did not meet the requirements set out in section 7(e) of the Act.

"IV. In failing to make, keep and preserve accurate records as to the hours worked by its employees, as found in finding of fact No. V., defendant violated sections 11(c) and 15(a) (5) of the Act and the Administrator's Regulations issued pursuant thereto."

The court further concluded that the Secretary was entitled to an injunction restraining further violations of §§ 7, 11(c), 15(a) (1), 15(a) (2), and 15(a) (5).

The court further found that Bearden subsequent to his employment by the company was employed by the Wade Drilling Company; that the company caused the Wade Drilling Company to discharge Bearden, and that in so doing it discriminated against Bearden in violation of § 15(a) (3). It concluded that

the Secretary was entitled to a further judgment enjoining violations of § 15(a)(3) and directing the company to permit the employment of Bearden by the Wade Drilling Company upon the company's leases without further discrimination.

The findings of fact and conclusions of law made by the United States District Court for the Northern District of Oklahoma in civil case No. 3900 were introduced in the instant case over the objection of the company.

■ It is clear from the evidence that the company kept its records of the work performed by Bearden on the basis of a 48-hour week and that under direction from the company's representative Bearden kept the records of the work performed by him on the same basis. Consequently, there were no correct records kept either by Bearden or the company of the amount of work performed by Bearden. Bearden's evidence clearly established that he worked in excess of 40 hours per week and a basis for estimating the number of hours that he worked. His evidence, therefore, afforded an approximate basis for computation of the hours worked in excess of the statutory maximum. In Handler v. Thrasher, 10 Cir., 191 F.2d 120, 122, we said:

> "It is incumbent upon the employee to show by a fair preponderance of the evidence not only that he worked in excess of the statutory work week, but the actual number of hours worked in excess thereof. But, where he proves that he has in fact performed work for which he has not been compensated, and produces evidence to show the amount and extent of that work, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed, or with evidence to negative the rea-

sonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award compensation to the appellee, even though the result be only approximate."

On the basis of the tests laid down in Handler v. Thrasher, we are of the opinion that Bearden's evidence was sufficient to support the court's finding of the number of hours worked by him in excess of the statutory maximum.

The trial court predicated its computation of the amount of recovery on the basis of a regular work week of 40 hours.

Title 29 U.S.C.A. § 207(a) provides for compensation "at a rate not less than one and one-half times the regular rate at which he is employed" for hours worked in excess of 40 hours in a work week. The "regular rate" spoken of in the statute was meant to be figured in terms of so much an hour.[2] Rates by units other than the hour are to be reduced by some method of computation to hourly rates.[3] The proper method of reducing a monthly salary to hourly rates is to first multiply the monthly salary by 12 (the number of months) and to divide by 52 (the number of weeks)[4] thus arriving at the equivalent weekly salary. In the present case the formula is $250.00 times 12, divided by 52, giving a weekly wage of $57.69.

To this point there can be no dispute in this case.

■ But how the weekly rate is to be reduced to the necessary hourly rate depends on whether the parties contemplated a regular work week of a certain number of hours, or whether it was understood that the salary was to cover all hours worked, even though the hours of work varied from day to day, and fluctuated from week to week.[5]

2. Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 579, 62 S.Ct. 1216, 86 L.Ed. 1682.

3. Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 579, 62 S.Ct. 1216, 86 L.Ed. 1682.

4. Lewellen v. Hardy-Burlingham Min. Co., D.C.Ky., 73 F.Supp. 63; 29 U.S.C.A. App., Regulations, § 778.3(4).

5. 29 U.S.C.A.App., Regulations, § 778.3.

If it was understood that the salary was compensation for a regular work week, the regular rate of pay is computed by dividing the salary by the number of hours which the salary is intended to compensate.[6]

If it was understood that the salary was to cover all hours worked, even though the number of hours of work varied and fluctuated from week to week, the hourly rate is computed by dividing the weekly salary by the number of hours actually worked.[7]

Once the regular hourly rate is determined by use of one of the above formulae, overtime is compensated by one-half the hourly rate for each hour over 40 which has previously been compensated at the regular rate [8] and one and one-half times the regular rate for each hour over 40 not previously compensated.[9]

It is clear from the cases and the regulations that the understanding of the parties as to the work week the salary is intended to compensate is the critical factor in determining which formula to apply and the data necessary for proper computation. Yet the trial court made no finding on this critical factor.

There was evidence that the president of the company contemplated a 48-hour week, but that evidence is refuted by the testimony of Bearden and Hamilton. The evidence of Bearden and Hamilton strongly tended to establish that the hours of work were to be irregular and would depend upon conditions of weather, bad oil to be treated, and the status of the tanks; that Bearden was supposed to work each day until his work was completed, and that his salary was to cover all hours worked, even though the hours worked fluctuated from day to day and week to week.

We conclude the cause should be remanded for a finding by the court upon whether the parties contemplated a regular work week or whether it was understood that the salary was to cover all hours worked, even though the number of hours actually worked was irregular and fluctuated from day to day and week to week.

The action in the Northen District of Oklahoma insofar as it sought relief from discrimination against Bearden was brought for his benefit. But, in other respects that action was brought to enforce the Act in the public interest and it cannot be said that Bearden was a party or privy to the action with respect to other issues.

It follows that the findings and conclusions of law in that case are not conclusive under the doctrine of res judicata.[10]

■ The findings of fact and conclusions of law in civil case No. 3900 in the Northern District of Oklahoma were made long after Bearden's employment with the company had terminated and could not operate to give notice to the company or charge it with knowledge of the fact that at the time of its employment of Bearden, it was violating the Fair Labor Standards Act of 1938 by failing to compensate Bearden for overtime work. They were, therefore, not admissible on the issue of liquidated damages. We are of the opinion that the trial court should redetermine the issue of liquidated damages and in so doing should not consider the findings and conclusions of law in No. 3900.

Reversed and remanded for further proceedings in accordance with the views herein expressed.

6. 29 U.S.C.A.App., Regulations, § 778.3(4); Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 580, 62 S.Ct. 1216, 86 L.Ed. 1682.

7. 29 U.S.C.A.App., Regulations, § 778.3(5); Anderson v. Federal Cartridge Corp., 8 Cir., 156 F.2d 681; Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 580, 62 S.Ct. 1216, 86 L.Ed. 1682.

8. 29 U.S.C.A.App., Regulations, § 778.3(5); Katchel v. Northern Engraving & Mfg. Co., 249 Wis. 578, 25 N.W.2d 431.

9. 29 U.S.C.A. § 207(a).

10. See Henderson v. United States Radiator Corp., 10 Cir., 78 F.2d 674, 675.