321 F.2d 558
 W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,
v.
FLAME COAL COMPANY, Incorporated, a corporation, Co-De Coal Company, Incorporated, a corporation, Amanda Coal Company, Incorporated, a corporation, and Virginia Cook Collins, Appellees.
 No. 15028.
 United States Court of Appeals Sixth Circuit.
 August 21, 1963.
 
 1
 Jacob I. Karro, Dept. of Labor, Washington, D. C. (Charles Donahue, Sol., Sigmund R. Balka, Atty., United States Dept. of Labor, Washington, D. C., Jeter S. Ray, Regional Atty., Dept. of Labor, Nashville, Tenn., on the brief) for appellant.
 
 
 2
 Duff Arnett, Hazard, Ky., for appellees.
 
 
 3
 Before CECIL, Chief Judge, DARR, Senior District Judge, and BOYD, District Judge.
 
 
 4
 BOYD, District Judge.
 
 
 5
 This is an appeal from a denial of an injunction to restrain defendants-appellees from violating certain provisions of the Fair Labor Standards Act of 1938, 52 Stat. 1060, as amended; 29 U.S.C. § 201 et seq. The injunction proceeding was filed pursuant to 29 U.S.C. § 217, plaintiff-appellant alleging violations of 29 U.S.C. §§ 215(a) (1), 215(a) (2) and 215(a) (5). The prohibited acts under section 215 are the wage and hour sections of the Act (sections 6 and 7) and the record keeping provisions of section 11(c).
 
 
 6
 In an oral opinion, the District Court in denying the injunction, ruled that it would not, in its discretion, issue an injunction unless "there is a preponderance of convincing evidence that violations are still occurring and will continue to occur"; that it is impossible for small operators to produce coal and at the same time comply with the requirements of the Fair Labor Standards Act; that the undertaking of the defendants "seems to be * * * a sort of joint enterprise"; that truck drivers do not have to be compensated for waiting time under the Act; and that nightwatchmen who work varied and fluctuating hours may be paid a fixed monthly salary without adjustment for overtime compensation.
 
 
 7
 During the period in question, the corporate defendants were engaged in mining, selling and transporting coal in interstate commerce. Virgina Cook Collins is president of the three defendant corporations and is joint owner with her husband of each of them. The three companies were inoperative at the time of the hearing in the District Court and had been so since December, 1961. All of the defendants' mining equipment was heavily mortgaged.
 
 
 8
 The employees who were engaged in the coal mining and hauling operations herein were paid by the unit; i. e., by the ton or by truck load, without regard to the number of hours worked, though their pay check stubs showed wages were based on a rate of $2.75 per hour. The nightwatchmen were paid a fixed monthly wage regardless of hours worked. The employer admittedly did not keep accurate records of hours worked by any of the employees as required by section 11 (c) and regulations thereunder.
 
 
 9
 The issuance of an injunction under the Fair Labor Standards Act is addressed to the reasonable discretion of the trial judge. Mitchell v. Hertzke, 234 F.2d 183 (C.A. 10, 1956). The denial of injunctive relief may, however, transcend the limits of "reasonable discretion." Where there has been a clear violation of the statutes and regulations, as here, there should be assurance that the offending party will in the future voluntarily comply with the Act. Otherwise, injunction should be issued, and the trial judge's refusal to do so may constitute abuse of discretion. Lenroot v. Kemp, 153 F.2d 153 (C.A. 5, 1946); Mitchell v. Hertzke, supra. See also Tobin v. Flippo, 91 F.Supp. 302 (D.C.E.D.Va. 1950) where the court found sufficient affirmative evidence to indicate intent to comply with the Act, resulting in denial of injunction.
 
 
 10
 The standard of public interest usually measures the propriety and need for injunctive relief. The public interest here is reflected by national policy expressed by Congress in the Act, and particularly the admonitions found in section 2(a). Walling v. J. Friedman & Co., 61 F.Supp. 325 (D.C.S.D.N.Y.1945); Mitchell v. Pidcock, 299 F.2d 281, 287 (C.A. 5, 1962). Hardship is often cited as a determinative factor in equity. The District Court in this case gave primary consideration to hardships that would be imposed upon the defendants by compliance with the Act, observing that defendants could not successfully operate under its requirements. The United States Supreme Court, in its early decision of United States v. Darby, 312 U.S. 100, 122, 61 S.Ct. 451, 461, 85 L.Ed. 609, notes that primary consideration is to be given, not to the individual defendant, but to the "hardship" imposed upon a community by permissive existence of substandard labor conditions:
 
 
 11
 "* * * the evils aimed at by the Act are the spread of substandard labor conditions through the use of the facilities of interstate commerce for competition by the goods so produced with those produced under the prescribed or better labor conditions * * *. The Act is thus directed at the suppression of a method or kind of competition in interstate commerce which it has in effect condemned as `unfair,' * * *."
 
 
 12
 The intent of Congress was not to injure small, ailing industries, but the construction of statutes cannot be strained because of likely hardship to them. Fleming v. Hawkeye Pearl Button Co., 113 F.2d 52, 57, 58 (C.A. 8, 1940); Mitchell v. Nutter, 161 F.Supp. 799 (D.C.Maine N.D.1958). In West Coast Hotel Co. v. Parrish, 300 U.S. 379, 397, 57 S.Ct. 578, 584, 81 L.Ed. 703, the Supreme Court quotes with approval the dissenting language from Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785, "* * * that while in individual cases hardship may result, the restriction will tenure to the benefit of the general class of employees in whose interest the law is passed and so to that of the community at large." Thus it is seen that the standard of public interest is not measured by the possible consequences which may befall one small business establishment when forced to comply with the law, but by the present or future existence of substandard labor conditions.
 
 
 13
 The fact that defendants are inoperative does not ipso facto render this cause moot. While recognizing the principle that a court is not to "* * * decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it," People of State of California v. San Pablo & T. R. Co., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747, the guiding language of Walling v. Haile Gold Mines, Inc., 136 F.2d 102 (C.A. 4, 1946), indicates the propriety of an injunction under the circumstances presented by the factual situation herein:
 
 
 14
 "It is familiar law that the discontinuation of an illegal practice by a defendant (either by going out of business or otherwise) after the institution of legal proceedings against the defendant by a public agency, does not render the controversy moot. (Cases cited.) This particularly is true where the challenged practices are capable of repetition. (Cases cited.) Nor is a case rendered moot where there is a need for the determination of a question of law to serve as a guide to the public agency which may be called upon to act again in the same matter." (Cases cited.)
 
 
 15
 There is nothing to prevent the defendants from resuming their mining operations. Certainly there is no affirmative indication they will not. Though their equipment is heavily mortgaged, and although the defendants may have ceased operations prior to institution of suit, these considerations alone do not negate the possibility of resumed activity. See Securities and Exchange Commission v. Culpepper, 270 F.2d 241, 251 (C.A. 2, 1959); United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303.
 
 
 16
 The District Judge, apparently questioning the applicability of the Act to this employer, commented in his oral opinion that "this kind of an undertaking seems to be not only an employer-employee relationship, but a sort of joint enterprise." The record affords no support for this conclusion. Hyman v. Regenstein, 258 F.2d 502, 513 (C.A. 5, 1958), cert. den. 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575, sets out the essential elements of a joint enterprise or venture. The facts before us do not meet the requisites set out therein, leaving us clearly with a master-servant relationship which is covered by the Act. See Rutherford Food Corp. v. McComb, 331 U.S. 722, 729, 730, 67 S.Ct. 1473, 91 L.Ed. 1772.
 
 
 17
 The trial judge discounted plaintiff-appellant's contention that the defendants' truck drivers were entitled to compensation for waiting time. Whether there has been a violation of section 6 of the Act by failure to take into account "waiting time" of the drivers in computing wages is to be determined by the tests set out in Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 and Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124. Concerning this, much depends on the agreement between the parties, as well as the nature of the service and all surrounding circumstances. The record establishes failure of the employer herein to pay employees for compensable waiting time. Since there is no basis for a finding that such violations of section 6 will not continue in the event business is resumed, an injunction should have issued ordering future compliance.
 
 
 18
 The sufficiency of wages paid to nightwatchmen is also in issue. The prescribed method for calculation is set out in Crawford Production Co. v. Bearden, 272 F.2d 100 (C.A. 10, 1959). Here, their employment contracts were for fixed monthly wages and there were variable or fluctuating hours of work. In this type situation, the "regular rate" is the computed salary per week divided by the number of hours worked per week. Overtime hours must be compensated at one and one-half times the regular rate. See Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Bumpus v. Continental Baking Co., 124 F.2d 549, 140 A.L.R. 1258 (C.A. 6, 1941), cert. den. 316 U.S. 704, 62 S.Ct. 1305, 86 L.Ed. 1772. The nightwatchmen were on duty more than 40 hours per week. Inasmuch as they did not receive the statutory compensation for this overtime work, the defendants have violated section 7 of the Act. This also affords compelling reason for awarding of the injunctive relief sought by appellant.
 
 
 19
 The defendants-appellees have violated the record keeping provisions and the minimum wage and overtime provisions of the Fair Labor Standards Act. There is insufficient evidence to warrant reasonable belief that such violations will not be continued in the future. This cause is, therefore, reversed and remanded to the District Court for entry of judgment enjoining defendants from future violations of sections 6 and 7 and 11(c) of the Fair Labor Standards Act.