Denise KUHNERT, Plaintiff-Appellant,†

v.

ADVANCED LASER MACHINING, INC.,
Defendant-Respondent.

Court of Appeals

*No. 2010AP333. Submitted on briefs December 21, 2010.
—Decided January 11, 2011.*

2011 WI App 23

(Also reported in 794 N.W.2d 805.)

† Petition for Review denied 4/12/11.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Carol S. Dittmar* of *Carol Dittmar Law Office, LLC*, Chippewa Falls.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael J. Cieslewicz of Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. Denise Kuhnert appeals a circuit court judgment affirming the methodology used by the Department of Workforce Development to calculate overtime wages owed to her by Advanced Laser Machining, Inc. Kuhnert argues that the department improperly determined Advanced Laser owed her only $2,699.65, but that using the correct methodology she is entitled to approximately $12,000. Kuhnert also contends the circuit court erred by awarding her only a portion of her attorney fees and costs. We reject Kuhnert's arguments and affirm.

## BACKGROUND

¶ 2. Kuhnert was employed by Advanced Laser from October 2005 until November 2007 as an entry/scheduling clerk and a purchasing agent. Advanced Laser paid Kuhnert on a salary basis. She received a predetermined amount of salary each pay period

and did not receive overtime pay, regardless of the number of hours she worked.

¶ 3. Shortly after Advanced Laser terminated Kuhnert's employment, she filed a wage complaint with the Department of Workforce Development. She alleged Advanced Laser had improperly classified her as an overtime exempt employee and she was entitled to recover unpaid overtime wages. *See* WIS. ADMIN. CODE § DWD 274.04 (Aug. 2005).[1]

¶ 4. Labor Standards Bureau director Robert Anderson rendered a final decision on Kuhnert's claim. Anderson determined that Kuhnert's position was not overtime exempt, and therefore she should have received overtime pay. He calculated the amount of overtime pay owed to Kuhnert using what he described as "[t]he department's long standing policy for determining overtime premium pay due to a salaried employee determined to be non-exempt." Anderson's method included the following steps:

1. Determine the employee's average hourly rate of pay per pay period. This calculation is achieved by dividing the total regular wages received in a pay period [the salary] by the total hours worked that pay period. Under the parties['] pay agreement the employer pays the employee a salary for whatever number of hours it may take to do the job.

2. The overtime premium rate for each pay period is determined by dividing the "average hourly rate" by two to determine the overtime premium rate. Overtime premium rate by definition is ½ the regular hourly rate for an employee. People think of overtime pay as 1½ times the regular hourly rate. This

---

[1] All references to WIS. ADMIN. CODE ch. DWD are to the August 2005 version unless otherwise noted.

is an error. It actually is the "regular rate" plus the "overtime premium rate."

3. Multiply the overtime premium rate for each pay period times the overtime hours worked to determine the overtime premium pay due. Note that as part of the salary the employee has already received the "regular rate of pay" for the overtime hours.

Anderson determined Advanced Laser owed Kuhnert $2,699.25 in overtime pay. Advanced Laser tendered a check to Kuhnert, but she refused to accept it.

¶ 5. Instead, Kuhnert filed a summons and complaint in the circuit court, alleging that: (1) Advanced Laser had improperly classified her as an overtime exempt employee; (2) she was due overtime pay; and (3) the Department of Workforce Development employed an incorrect method to calculate her overtime pay. Kuhnert claimed the department should have calculated her overtime pay by: (1) dividing her normal weekly salary by the number of hours she was expected to work per week (thirty-eight) to come up with a "regular rate of pay;" (2) multiplying the regular rate of pay by 1.5 to come up with an "overtime rate;" and (3) multiplying the overtime rate by the number of overtime hours worked each week.

¶ 6. The circuit court granted declaratory judgment in favor of Advanced Laser on the calculation methodology issue, holding that the method used by the Department of Workforce Development was appropriate. A bench trial was held on two issues: (1) whether Kuhnert was an overtime exempt employee; and (2) whether she worked additional hours of overtime beyond those to which the parties stipulated. On the first issue, the court determined Kuhnert was not an exempt employee and therefore was entitled to over-

time pay. On the second issue, the court found Kuhnert had failed to prove she worked additional hours of overtime. After a subsequent hearing, the court awarded Kuhnert a portion of her requested attorney fees and costs, totaling $2,325. Kuhnert now appeals.

## DISCUSSION

¶ 7. Kuhnert raises two arguments on appeal. First, she argues the Department of Workforce Development used an incorrect methodology to calculate the overtime pay Advanced Laser owed her. Second, she argues the circuit court erred by awarding her only a portion of her requested attorney fees and costs.

### I. Methodology for calculating overtime pay

¶ 8. To calculate Kuhnert's overtime pay, Labor Standards Bureau director Anderson used the Department of Workforce Development's longstanding methodology. The circuit court deferred to the department, holding that its method for calculating overtime pay was appropriate in Kuhnert's case. Kuhnert argues the department's calculation methodology is not entitled to any deference because it is "completely at odds with the applicable statutes and regulations, let alone a common sense understanding of the manner in which overtime is calculated."

¶ 9. We disagree. On review of an administrative agency's decision, we are not bound by the agency's conclusions of law, but we may defer to the agency's legal conclusions. *Currie v. Department of Indus., Labor & Human Relations*, 210 Wis. 2d 380, 387, 565 N.W.2d 253

(Ct. App. 1997). An agency's interpretation or application of a statute may be accorded great weight deference, due weight deference, or no deference. *Id.*

■■

¶ 10. We accord great weight deference when all four of the following requirements are met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the agency's interpretation is longstanding; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.* at 387–88. Under the great weight deference standard, "a court will uphold an agency's reasonable interpretation that is not contrary to the clear meaning of the statute, even if the court feels that an alternative interpretation is more reasonable." *UFE Inc. v. Labor & Indus. Review Comm'n*, 201 Wis. 2d 274, 287, 548 N.W.2d 57 (1996).

■■

¶ 11. Additionally, an agency's interpretation of its own rules and regulations is controlling unless the interpretation is plainly erroneous or inconsistent with the language of the rule. *Marder v. Board of Regents*, 2004 WI App 177, ¶ 27, 276 Wis. 2d 186, 687 N.W.2d 832, *aff'd*, 2005 WI 159, 286 Wis. 2d 252, 706 N.W.2d 110. This level of deference is called either controlling weight or great weight. *Id.*, ¶ 27 n.3. "Despite the difference in terminology, the deference we give to an agency interpretation of its own rules is similar to the great weight standard applied to statutory interpretations. Both turn on whether the agency's interpretation is reasonable and consistent with the meaning or purpose of the regulation or statute." *Id.* (citations omitted).

¶ 12. Here, the department's methodology for calculating Kuhnert's overtime pay is entitled to great weight deference. Pursuant to WIS. STAT. § 103.025(1)(c),[2] "overtime compensation" means "the compensation required to be paid for hours worked during periods that the department has classified, by rule promulgated under s. 103.02, as periods to be paid for at the rate of at least 1.5 times an employee's regular rate of pay." The rule is set forth in WIS. ADMIN. CODE § DWD 274.03, which states that "[e]ach employer subject to this chapter shall pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week." Kuhnert admits that neither the statutes nor the administrative code define "regular rate of pay" or the appropriate method for calculating it.

¶ 13. The department therefore developed a method to calculate the regular rate of pay and, from it, the overtime rate. In doing so, the department interpreted the statutes and its own regulations. Its interpretation meets the four requirements for great weight deference. *See Currie*, 210 Wis. 2d at 387–88. First, the legislature charged the department with devising rules regulating employee wages. *See* WIS. STAT. § 103.02. Second, pursuant to that authority and using its specialized knowledge, the department enacted administrative code provisions related to overtime pay and issued a publication clarifying how overtime pay should be calculated for salaried employees. *See* WIS. ADMIN. CODE §§ DWD 274.03, 274.04; DWD publication ERD-13109–P, *available at* http://dwd.wisconsin.gov/dwd/publications/

---

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

erd/pdf/erd_13109_p.pdf. Third, the methodology set forth in the publication is the department's "long standing policy for determining overtime premium pay due to a salaried employee determined to be non-exempt." Fourth, the publication provides a uniform standard for use by all employers.

¶ 14. Applying the great weight deference standard, we uphold the department's methodology because it is not contrary to the clear meaning of the applicable statutes and regulations. *See UFE Inc.*, 201 Wis. 2d at 287. As previously discussed, WIS. STAT. § 103.025(1)(c) and WIS. ADMIN. CODE § DWD 274.03 require that a non-exempt employee be compensated for overtime hours at a rate of time and one-half the regular rate of pay. However, "regular rate of pay" and the method for calculating it are left undefined. The department therefore developed a method for calculating "regular rate of pay" in order to determine the overtime pay owed to a non-exempt salaried employee. *See* DWD publication ERD-13109–P. The department's publication states:

> Overtime must be paid at time and one-half the regular rate of pay. The "regular rate" is an hourly rate that will change for a salaried employee based upon the number of hours worked in a week. *Since salary constitutes wages at straight time for all hours worked, the employer owes an additional half time for the hours in excess of 40 in a week.*
>
> Example: A non-exempt employee is paid a salary of $500 per week, and they work 50 hours in a given week. *Since the agreement is just that the employee will be paid a $500 salary, that sum would cover any number of hours worked.* The regular rate for this week is the salary ($500) divided by the 50 hours worked, or $10.00. To pay overtime, the employer would divide the

regular rate in half ($10.00 divided by 2, or $5.00), and then multiply that result by the 10 overtime hours. The overtime due for this week would be $50. The employee's gross wages for the week, including overtime, would be $550 (the $500 salary plus $50 in overtime pay).

*See id.* (emphasis added).

¶ 15. The department's calculation methodology is consistent with the statutory and code requirements that an employee be paid time and one-half the regular rate for hours worked in excess of forty hours per week. *See* Wis. Stat. § 103.025(1)(c); Wis. Admin. Code § DWD 274.03. The department's methodology recognizes that, when an employee has agreed to be paid on a salaried basis for fluctuating hours, the base salary includes the "regular rate of pay" for any overtime hours worked. *See* DWD publication ERD-13109-P. Thus, in order to calculate the additional amount due for overtime hours, the employer multiplies the number of overtime hours by one-half the regular rate of pay. *See id.*

¶ 16. The department's methodology is also consistent with the method our supreme court used to calculate overtime wages owed to a misclassified employee whose overtime pay was withheld. In *Katchel v. Northern Engraving & Manufacturing Co.*, 249 Wis. 578, 588–89, 25 N.W.2d 431 (1946), the court confirmed that an employee who receives a weekly salary has already been paid his or her base salary for all hours worked, including overtime hours. Thus, if overtime is mistakenly withheld from that employee, the employee is only owed additional half-time compensation for any overtime hours. *Id.*

¶ 17. Kuhnert argues *Katchel* is distinguishable because in that case "it was not known what hours the employee would be working at the inception of the

employment." She contends that, here, Advanced Laser "was very specific in the hours that Ms. Kuhnert was to work, including a minimum of 38 hours per week[.]" However, Kuhnert concedes that she agreed to be paid on a salaried basis, regardless of the hours she worked. While her employer specified that she was to work a minimum of thirty-eight hours per week, it did not specify how many hours she would actually work each week. In fact, Kuhnert's weekly hours fluctuated significantly over the course of her employment, and during the vast majority of weeks she did not work precisely thirty-eight hours.

¶ 18. The methodology used by the department to calculate Kuhnert's overtime pay was consistent with *Katchel* and with the department's longstanding practice. Anderson determined Kuhnert's regular rate of pay by "dividing the total regular wages received in a pay period [the salary] by the total hours worked that pay period." He then determined Kuhnert's overtime rate by dividing her regular rate of pay in half. Finally, he multiplied the overtime rate for each pay period by the overtime hours worked during that pay period to determine the overtime pay due. Using this method, Anderson determined that Kuhnert was entitled to $2,699.65 in overtime pay. He noted that "as part of the salary the employee has already received the 'regular rate of pay' for the overtime hours." He clarified, "People think of overtime pay as 1½ times the regular hourly rate . . . . It actually is the 'regular rate' plus the 'overtime premium rate.' " Anderson's calculation was correct,[3] and his methodology was in accordance with

---

[3] Kuhnert does not argue that Anderson's calculation was incorrect, that is, that he incorrectly applied the department's calculation methodology.

Wisconsin precedent, the statutes and administrative code, and the department's longstanding practice.

¶ 19. Kuhnert cites a number of federal cases for the proposition that the calculation methodology used by Anderson is "inapplicable to the calculation of overtime due a misclassified employee under . . . federal law." However, federal cases are not controlling. Kuhnert never pled a federal law claim. She made a claim under state law for unpaid overtime wages. There is no support for the proposition that federal law controls the calculation of overtime wages for claims made under Wisconsin law.

## II. Attorney fees and costs

¶ 20. The circuit court awarded Kuhnert $2,325 in attorney fees and costs. Kuhnert argues that, as the prevailing party, she was entitled to recover the entire amount of her attorney fees and costs – $14,607.05 – or that amount less the time spent on declaratory judgment arguing the appropriate calculation methodology.

¶ 21. WISCONSIN STAT. § 109.03(6) provides that the court "may" allow a "prevailing party" to recover reasonable "expenses" in an unpaid wage action. These "expenses" include attorney fees. *Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 401, 588 N.W.2d 67 (Ct. App. 1998). The word "may" in a statute generally allows for the exercise of discretion, as opposed to the word "shall," which indicates mandatory action. *Rotfeld v. Department of Natural Res.*, 147 Wis. 2d 720, 726, 434 N.W.2d 617 (Ct. App. 1988).

¶ 22. Furthermore, "[w]e defer to the trial court's attorney fee determination because it has the 'advantageous position to observe the amount and quality of the

work performed and has the expertise to evaluate the reasonableness of the fees.'" *Beaudette v. Eau Claire Cnty. Sheriff's Dep't,* 2003 WI App 153, ¶ 31, 265 Wis. 2d 744, 668 N.W.2d 133 (quoting *Allied Processors v. Western Nat'l Mut. Ins. Co.,* 2001 WI App 129, ¶ 46, 246 Wis. 2d 579, 629 N.W.2d 329). We will sustain the circuit court's award unless it erroneously exercised its discretion. *Id.* "A court properly exercises discretion when it considers the facts of record under the proper legal standard and reasons its way to a rational conclusion." *Id.*

¶ 23. Here, the circuit court properly exercised its discretion by awarding Kuhnert only a portion of her requested attorney fees and costs. The court found that Kuhnert could recover the fees and costs she incurred up until the point Advanced Laser tendered her a check for the amount the department ordered it to pay. However, the court determined the majority of Kuhnert's fees and costs were incurred in losing efforts after Advanced Laser tendered payment. The court reasoned:

> The plaintiff did not prevail, especially regarding the methods for calculating overtime. The plaintiff could have accepted the amount tendered and not commenced the additional litigation. The plaintiff attempted unsuccessfully to convince the Court that the method used by the State of Wisconsin to calculate overtime hours in pay is incorrect and should be changed and I'm not going to award fees for that unsuccessful effort[.]

The court determined Kuhnert was not the prevailing party in the circuit court action because she did not receive anything from that action that she was not already entitled to, based on the department's decision.

The court therefore awarded some, but not all, of Kuhnert's requested attorney fees. The court did not erroneously exercise its discretion.

*By the Court.*—Judgment affirmed.